IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 MAR -3  A 10: 01

CLERK'S OFFICE
AT GREENBELT

BY_____ DEPUTY

| | | |
|---|---|---|
| TANESHA MYLES-ANDERSON, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-15-2461 |
| THE EMMES CORPORATION, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Tanesha Myles-Anderson ("Plaintiff" or "Myles-Anderson") brings suit *pro se* against her former employer, the EMMES Corporation ("Defendant" or "EMMES"), for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Md. Code, State Gov't § 20-606, and Montgomery Cty. Code § 27-19 arising from her November 7, 2013 termination. Plaintiff claims that her termination was in retaliation for her complaints of racial discrimination. Presently pending before the Court is Defendant's Motion for Summary Judgment, ECF No. 18. Plaintiff has not responded to Defendant's Motion, and the time for doing so has expired. *See* ECF No. 19. No hearing is necessary. *See* Loc. R. 105.6. For the following reasons, Defendant's Motion for Summary Judgment is granted.

## I.   BACKGROUND

Tanesha Myles-Anderson was employed at the EMMES Corporation in Rockville, Maryland as an Office Services Manager from February 22, 2011 until November 7, 2013. ECF

No. 18-1 at 1.[1] Myles-Anderson is African American. ECF No. 1 ¶ 2. In her position as Office

Services Manager, Myles-Anderson was responsible for various administrative tasks, including

entering and maintaining new hire and employee information, ordering name plates and office

supplies, and making presentations at new hire orientations. ECF No. 18-1 at 2; ECF No. 18-3 at

2.

In July of 2013, Myles-Anderson received two emails from Brian Hochheimer, EMMES

Vice President and Chief Financial Officer, expressing his displeasure with her lack of

punctuality. ECF No. 18-1 at 2. According to Hochheimer's email dated July 2, 2013, Myles-

Anderson had arrived late to her portion of the new hire orientation presentation. ECF No. 18-7

at 2. Hochheimer told her, "[t]his is not acceptable. It is our first interaction with our new hires

and we need to be on time." *Id.* Myles-Anderson received and acknowledged the email. *Id.*[2] On

July 9, 2013, Hochheimer again emailed Myles-Anderson about arriving late. He stated, "On

Monday, you were late arriving to work and late for orientation. In addition, I understand that not

all the new hire badges were activated and ready to use. . . This is unexcusable." ECF No. 18-8 at

3. Myles-Anderson received and acknowledged this email. *Id.*[3] Hochheimer issued a formal

written warning to Myles-Anderson on July 10, 2013, citing her late arrivals and unsatisfactory

attention to detail. ECF No. 18-9. She was warned that failure to correct these issues "may lead

to further disciplinary action, up to and including termination of employment." *Id.*

Two months passed. On August 29, 2013, Myles-Anderson received a written warning

from Facilities Manager Clay Edwards. ECF No. 18-10 at 2. Edwards stated that Plaintiff

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[2] Myles-Anderson did not dispute that she was late, but rather, stated that "things can happen very quickly at the front desk" and that she was "NO MORE than a few minutes late." ECF No. 18-7 at 2.

[3] Myles-Anderson again did not dispute she was late, but claimed that she should have been paged when it was her turn to present at orientation. ECF No. 18-8 at 3.

"continue[d] to maintain individual employe[es'] information incorrectly. Over the last three days I have discovered and corrected approximately twenty employee entries which . . . had not been correctly administered." *Id.* Edwards further explained that "[y]our performance in this area has worked to undermine the efforts of this department and other EMMES staff." *Id.* Myles-Anderson was again cautioned that failure to correct these issues "may lead to further disciplinary action, up to and including termination of employment." *Id.*

On September 18, 2013, Myles-Anderson wrote a letter to Dr. Ann Lindblad, the President of EMMES. ECF No. 18-13 at 2. Myles-Anderson told Dr. Lindblad, "I feel as the new President of EMMES you need to be made aware of the behavior being exhibited by senior management and what I and others deem to be a 'hostile work environment.'" *Id.* In the letter, Myles-Anderson complained primarily about "harassment" from a receptionist, Rachel Simpson.[4] Myles-Anderson stated that Simpson was not reprimanded by the managers for this behavior, and she felt that "this was the culture and it[']s always ignored w[h]ere people of color are concerned. People of color are being held to a different set of unspoken rules and standards." *Id.* Additionally, Myles-Anderson claimed that Edwards and Hochheimer "have either observed or been made aware of this intolerant behavior and now my performance has been impacted," and that their "solution to this problem is to terminate my employment with EMMES." *Id.* Myles-Anderson reiterated that she felt bullied and asked Dr. Lindblad for support.

Following this letter, Vice President of Human Resources Jennifer Hester engaged an outside investigator to investigate Myles-Anderson's claims of discrimination. ECF No. 18-2 ¶ 3; ECF No. 18 at 4. According to Hester, the investigator interviewed eight witnesses, including

---

[4] Myles-Anderson stated that Simpson was resentful of the fact that Myles-Anderson had obtained a position for which Simpson had previously interviewed, and that Simpson had engaged in "disrupting and sabotaging behavior" towards Myles-Anderson, including sending emails to other staff members "undermining" Myles-Anderson. ECF No. 18-13 at 2–5.

Myles-Anderson. ECF No. 18-2 ¶ 4. Myles-Anderson "eventually identified [other] certain employees [of color]" who had been discriminated against, but "never provided any details or evidence supporting her allegations." *Id.* ¶ 6. After completion of the investigation, the investigator "found no evidence of unlawful conduct." *Id.* ¶ 7. The results of the investigation were shared with Myles-Anderson on October 25, 2013. *Id.* ¶ 8. Although the investigator concluded that hostilities existed between Myles-Anderson and other EMMES employees, none of them appeared to be racially-motivated. *Id.* EMMES did, however, take "corrective action against those named by Myles-Anderson who EMMES determined had not acted professionally." *Id.* ¶ 9. Sometime during the Fall of 2013, Myles-Anderson also filed a charge of discrimination with the Equal Employment Opportunity Commission. *See id.* ¶ 11.[5] Defendant states that they were not aware that the EEOC charge had been filed until February 2014. *Id.*

During this time, Myles-Anderson received two additional emails on September 26, 2013 and October 8, 2013 citing her performance issues, ECF No. 18-16 at 2; ECF No. 18-17 at 2. In these emails, Edwards informed Myles-Anderson that she had forgotten to order several name tags, causing issues for both the new hires and Edwards. *Id.* Edwards further stated that Myles-Anderson had failed to update an issue for an employee in the "issue tracker" and also failed to process an order for another employee before leaving work that day. ECF No. 18-16 at 2.

On November 7, 2013, Myles-Anderson received notice of termination from EMMES. ECF No. 18-4 at 2. The letter cited several examples of "continued unsatisfactory work performance," including incomplete data entry, incorrect information posted to the Intranet, the misspelling of a new hire's name for his wall tag, and "failure to notify Network Services in a timely manner of new hire offer assignments." *Id.* The termination letter noted the repeated

---

[5] The charge was dismissed on February 27, 2014, and Myles-Anderson simultaneously received notice of her right to sue. ECF No. 18-12 at 2.

warnings bringing these issues to Myles-Anderson's attention, and the ultimate failure to improve her performance. *Id.*

Myles-Anderson filed the instant Complaint in this Court on August 20, 2015. ECF No. 1. Myles-Anderson asserted claims under 1) Title VII of the Civil Rights Act of 1964, 2) Md. Code, State Gov't § 20-606 (unlawful employment practices), and 3) Montgomery Cty. Code § 27-19 (discriminatory employment practices). ECF No. 1 at 2–3. Defendant filed its Motion for Summary Judgment on May 10, 2016. ECF No. 18. The Court sent a letter to Myles-Anderson, as a *pro se* plaintiff, informing her that a dispositive motion had been filed in her case, and advising her of her rights under Fed. R. Civ. P. 12 and 56. ECF No. 19. To date, Plaintiff has not responded.

## II.   STANDARD OF REVIEW

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In undertaking this inquiry, the Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). But this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993).

The burden is on the moving party to show "that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to

make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof." *Benton v. Prince George's Cmty. Coll.*, No. CIV.A. DKC 12-1577, 2013 WL 4501324, at *3 (D. Md. Aug. 21, 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). Thus, upon a motion for summary judgment, the opposing party "may not rest upon . . . mere allegations or denials," but rather, "must set forth specific facts showing that there is a genuine issue for trial. If the [opposing] party does not so respond, summary judgment, if appropriate, shall be entered against the [opposing] party." *Tyler v. Prince George's Cty., Maryland*, 16 F. App'x 191, 192 (4th Cir. 2001) (citing Fed. R. Civ. P. 56(e)). In this case, Plaintiff has filed no response to Defendant's motion for summary judgment.

## III.   ANALYSIS

Title VII prohibits "employer retaliation on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2522 (2013) (citing 42 U.S.C. § 2000e–3(a)). To establish a claim for retaliation under Title VII, Plaintiff must show that 1) she engaged in a protected activity, 2) her employer took an adverse employment action against her, and 3) a causal connection exists between the protected activity and the adverse action. *Diggs v. Bd. of Educ. of Baltimore Cty.*, Civil Action No. RDB-14-715, 2015 WL 5604278, at *14 (D. Md. Sept. 23, 2015) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). To satisfy the causation element of a retaliation claim, plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer," not just a "motivating factor." *Manguiat v. Bd. of Educ. of Prince George's Cty.*, No. GJH-13-1165, 2015 WL 2376008, at *9–10 (D. Md. May 18, 2015) (citing *Nassar*, 133 S.Ct. at 2533–34 (2013)). If the plaintiff-employee establishes this prima facie case, the burden shifts to the defendant-employer

6

to "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Roberts v. Saint Agnes Hosp.*, No. GJH-13-3475, 2015 WL 3932398, at *11 (D. Md. June 25, 2015) (citing *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011)).

Here, Plaintiff has failed to establish the third prong of her prima facie case: causation. Myles-Anderson relies exclusively on the "temporal proximity" between her internal complaint of discrimination to Dr. Lindblad on September 18, 2013, and her termination on November 7, 2013, ECF No. 1 at 2; *see Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006), and provides no other details suggesting a causal connection between her complaint and her termination. But the actions that led to Plaintiff's termination began *before* her complaint to Dr. Lindblad. *See Francis*, 452 F.3d at 309 (affirming summary judgment where the "actions that led to [plaintiff's] probation and termination began before her protected activity, belying the conclusion that a reasonable factfinder might find that [defendant's] activity was motivated by [plaintiff's] complaints"). Specifically, Plaintiff received no fewer than two emails bringing her unsatisfactory performance to her attention, as well as two formal written warnings of possible termination, well before Plaintiff wrote to Dr. Lindblad. As early as July 2, 2013, EMMES Vice President Hochheimer informed Myles-Anderson that she was late to orientation and it was "not acceptable." ECF No. 18-7. He again wrote to her on July 9, 2013, expressing that arriving to work was "inexcusable," and that certain new hire badges had not been activated on time. ECF No. 18-8. These problems did not improve over the summer, as another supervisor, Facilities Manager Clay Edwards, issued a written warning to Myles-Anderson on August 29, 2013 — citing multiple errors in the database she administered. ECF No. 18-10. Thus, Plaintiff has failed to establish a causal connection between her protected activity and her termination because she has not "adduce[d] any admissible evidence to suggest a connection between [her] complaints

about alleged workplace discrimination and [her] eventual termination." *Roberts*, 2015 WL 3932398, at \*11 (granting summary judgment for employer on retaliation claim where employee's termination was result of "lengthy and well-documented performance issues").

Even if Plaintiff could establish the necessary causality, EMMES has articulated a legitimate, non-retaliatory reason for her termination, namely, her well-documented performance issues. On July 10, 2013, Hochheimer informed Myles-Anderson that she was late to orientation, "continued to issue employe[es'] nonfunctioning ID badges and badges with misspelled employee names." ECF No. 18-9 at 2. Hochheimer stressed that these deficiencies "worked to undermine the efforts of your department and other EMMES staff." *Id.* On August 29, 2013, Edwards warned Myles-Anderson that "you continue to maintain individual employee's information incorrectly . . . [t]hese types of issues have been brought to your attention multiple times including in a written warning presented to you on July 10, 2013." ECF No. 18-10. Again on September 26, 2013, Edwards cited three instances of errors attributable to Myles-Anderson, including two name tags that were not ordered, an issue that was not posted to the tracker, and an order that was not submitted. ECF No. 18-16. Myles-Anderson's final termination letter on November 7, 2013 reflects these same concerns, pointing to incomplete and incorrect data entries and failure to complete assignments in a timely manner. ECF No. 18-4. Therefore, it is apparent that Defendant EMMES had a legitimate, non-retaliatory reason for terminating Myles-Anderson. *See Manguiat*, 2015 WL 2376008, at 10 (granting summary judgment for employer on retaliation claim where employer adequately demonstrated that lowering of employee's teaching certificate was in response to unsatisfactory performance). Additionally, because Myles-Anderson provides no response to Defendant's Motion for Summary Judgment the Court is unable to find to the contrary.

As for Myles-Anderson's claims under Md. Code, State Gov't § 20-606 and Montgomery Cty. Code § 27-19, they must similarly fail. The Maryland Fair Employment Practices Act "tracks the language" of Title VII, and thus a retaliation claim under Maryland state law bears the "same criteria" as a federal retaliation claim under 42 U.S.C. § 2000e-3(a). *See Chappell v. S. Maryland Hosp., Inc.*, 320 Md. 483, 495–96 (1990). Further, the anti-discrimination provisions of the Montgomery County Code are also "substantively similar" to federal law under Title VII. *See Magee v. DanSources Tech. Servs., Inc.*, 137 Md. App. 527, 548 (2001). Because Myles-Anderson has failed to create a genuine issue of material fact with respect to her Title VII retaliation claims, she has also failed to do so under Maryland law and the Montgomery County Code.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 18, is granted. A separate Order shall issue.

Date: March 3 , 2017

George J. Hazel
United States District Judge